ALVIN D. EDWARDS v. CLARENCE N. WOODS and IRA WOODS, Copartners, Doing Business under the name and style of WOODS & SON TRANSFER COMPANY, Appellants.—119 S. W. (2d) 359.

Division Two, August 17, 1938.

*W. A. Franken* and *Chapman & Chapman* for appellants.

*S. J. & G. C. Jones* and *Hunter & Chamier* for respondent.

1100

WESTHUES, C.—Respondent, Edwards, obtained a verdict against appellants in the sum of $30,000, as damages for personal injuries sustained in a collision of a car driven by respondent and a truck operated by defendants' agent. The trial court overruled the motion for a new trial on condition that plaintiff enter a *remittitur* of $20,-000. Plaintiff complied with the condition and judgment was entered in the sum of $10,000. Defendants appealed.

Plaintiff, on April 4, 1933, at about seven-thirty P. M., was driving a Chevrolet coach north on Highway No. 5, between Purdin and Browning, Missouri. Defendants' truck, with an ordinary cattle or stock rack, was being driven south. The highway was graveled for a space of about twenty feet and had shoulders the usual width of five or six feet. It had been raining and was dark and foggy. Plaintiff testified that he saw a car coming at some distance with only one headlight burning. No clearance lights were burning and he could not see that it was a truck. Plaintiff testified that he was driving to the right of the center of the highway; that he was unable to determine, until the truck was only about one hundred feet from him, which of the two headlights was out; that he then discovered that the left light was not burning; that he was then near the right edge of the gravel. Plaintiff's car and the truck, using a common expression, "side-swiped" each other. After the collision the door handle of plaintiff's car was found embedded in the front end of the frame of the truck. The left upright, at the front of plaintiff's car, holding the windshield, and the glass in the windshield and left door were broken. There were marks along the side of the car where the truck had come in contact with it. Other parts of the car were broken or bent, but the details of those are immaterial on this appeal. Broken glass was found near the center of the highway on plaintiff's side of the center line. Plaintiff sustained severe and permanent injuries which will be referred to later when we consider the amount of the verdict.

The charges of negligence in plaintiff's petition, which were submitted to the jury by instructions, were: Failure of the truck driver to keep said truck as close to the right-hand or west side of the highway as practical; failure of the truck driver to turn said truck to the right of the center of said highway, and failure to have the left headlight of said truck lighted or burning. Defendants denied that the truck driver was negligent in any of the matters alleged, and also pleaded contributory negligence. By their answer defendants also raised the question of plaintiff's right to maintain this action. This contention was based on the theory that at the time of the collision plaintiff was engaged in his occupation as a traveling salesman for the Ill. Mo. Supply Company, and was compensated for his injury under the Workmens' Compensation Act; that therefore the Ill. Mo. Supply Company and the Maryland Casualty Company

were necessary parties to the cause of action. Appellants assert that plaintiff could not, under Section 3309, Revised Statutes 1929 (Mo. Stat. Ann., p. 8244), maintain this action. That section of the Compensation Act provides that where a third person is liable to an employee the employer shall be subrogated to the right of the employee against such third person. Our Courts of Appeals have held in a number of cases that an employee may maintain such an action without joining as plaintiff the employer or the insurance company. The St. Louis Court of Appeals held in McKenzie v. Missouri Stables, 34 S. W. (2d) 136, an exhaustive and well-considered opinion, that the employee had the right to maintain such action. That case was referred to and approved by this court in Anzer v. Humes-Deal Co., 332 Mo. 432, 58 S. W. (2d) 962. In the present case, an agreement between the insurance company, the employer and the employee, the plaintiff, was introduced in evidence. This agreement disclosed that the employer, an insurance company, had consented that plaintiff might prosecute the suit in his own name. A judgment, therefore, in this case would be a complete bar to any further suit based on the same cause of action. That is the only question of importance which concerns the defendants. Under the adjudicated cases above referred to, plaintiff had a right to maintain this suit. The point is ruled against appellants.

Appellants also assert that the plaintiff was negligent, as a matter of law, because he had his elbow protruding from the window of the car. A sufficient answer to this contention is, that plaintiff testified he did not have his arm out of the window, but had both hands on the steering wheel. Appellants assert that this evidence of plaintiff was so contrary to the physical facts that it should be disregarded. It is hard to follow appellants' theory. We find that plaintiff also sustained an injury to his leg, and appellants do not contend that this injured leg was out of the window. The body of plaintiff's car was struck at the upright, next to the front windshield, and damaged to a considerable extent. The collision rendered the steering equipment out of commission. These facts do not support appellants' theory that plaintiff could not have been hurt if he had not had his elbow out of the window. It is true the major injury plaintiff sustained was to his left elbow and arm, but the evidence disclosed that the impact was at a point where a driver's left arm would be when sitting behind the steering wheel. Aside from that we are not willing to subscribe to the theory that a driver of a car is guilty of negligence, as a matter of law, because he rests his arm upon the door frame of the car. By doing so his elbow would not extend beyond the fender of the car. We may accede to appellants' theory, that as a practical proposition it has become quite hazardous to travel upon our highways that are frequented by commercial trucks. But the law has not, as yet at least, held the drivers

of cars negligent in using such highways. Again, if a driver of a car is negligent because his elbow protrudes from the car window, what about commercial trucks, such as figured in this collision, that have heavy frames, wider than private cars, that extend much farther than a man's arm resting in the window of a car. The trial court gave an instruction which informed the jury, that if at the time of the collision plaintiff had his elbow protruding from the window, and if by doing so plaintiff was negligent, and such negligence contributed to his injury, then plaintiff could not recover. Certainly such an instruction was as favorable to appellants as the law should permit. A number of other instructions were given submitting to the jury the question of whether plaintiff was guilty of contributory negligence. That question was amply covered by instructions and therefore appellants' complaint, that the trial court refused other instructions on contributory negligence, is without merit.

■ During the trial, while plaintiff was on the witness stand, he was asked to exhibit his injured arm to the jury. The record discloses that while plaintiff was complying with this request the attorney for defendants objected and stated that plaintiff was making a demonstration by twisting his arm. A discussion followed between counsel on both sides and the court, the jury being first excused. After the jury had returned to the courtroom the trial court instructed the jury to disregard the demonstration made by plaintiff. Attorneys for defendants asked that a mistrial be declared. This the court refused, and the ruling was made the subject of an assignment of error. We do not note anything in the record that called for a mistrial. Plaintiff evidently was attempting to disclose to the jury the utter helplessness of his left arm. The record does not indicate any deliberate violation of the rules of evidence, and we deem the ruling of the trial court entirely proper.

■ Appellants also complain of instruction number three, which submitted the case to the jury upon the three charges of negligence above mentioned in the alternative. It is argued that the record did not contain evidence to support all three of these charges, and also that the evidence did not disclose that the failure to have the left headlight burning contributed to plaintiff's injury. These contentions are without merit. Plaintiff testified that he could not determine which headlight of defendants' truck was not burning until the truck was only a short distance from him. Plaintiff said:

"A. I couldn't tell until the car was right on me. When I saw the car coming, for my own safety as well as their's, I dimmed my lights. . . ."

"Q. Just tell the jury on which side of the highway you were traveling at this time? A. On the right hand side, which would be the East side going North.

"Q. How close were you to the East edge of the graveled portion

of the highway? A. I got over as far as I could safely get to keep on the gravel and not get into a gravel ridge there and into the mud."

If plaintiff was struck while he was to the right of the center of the road, then of course defendants' truck must have been on its left side, and the jury was authorized to find that the truck driver was negligent in driving on the left side and in failing to turn to the right. Failure to have the left headlight burning may have lessened the truck driver's vision of objects upon the highway on this foggy night. Appellants assert that plaintiff saw the truck and therefore the absence of one light could not have contributed to his injury. Lights are required to be burning on all vehicles traveling the highways for another purpose, that is, to illuminate the highway and enable the driver to see objects ahead of him. We hold, therefore, that there was evidence to support the charges of negligence and also that the jury was authorized to find that any or all of them contributed to plaintiff's injuries.

Neither is there any merit in appellants' contention that plaintiff's given instruction, which we have discussed, broadened the issues. The petition alleged all of the charges of negligence submitted by the instruction and many more. The issues were, therefore, narrowed and not broadened.

█ In a number of assignments of error appellants complain because plaintiff's instruction authorizing a verdict did not embody defendants' plea of contributory negligence. In this appellants are in error. The instruction reads in part as follows:

"And if you further believe and find from the evidence in this case that on April 4, 1933, the plaintiff was driving his automobile in a northerly direction on a public highway, known as highway No. 5, and between Purdin and Browning, Missouri, and was driving the same as near the east side of said highway as practicable, and was in the exercise of the highest degree of care while so driving, if you so find."

The above instruction sufficiently covered the subject matter of contributory negligence because it required a finding, before authorizing a verdict, that plaintiff was at the time of the collision exercising the highest degree of care. Defendants' instruction covered this subject in more detail and therefore the jury was amply advised as to the relative rights of the parties. [Meily v. St. Louis & S. F. Railroad Co., 215 Mo. 567, 1. c. 587-589, 114 S. W. 1013, 1. c. 1019, 1020 (2); McIntyre v. St. Louis-San Francisco Railroad Co., 286 Mo. 234, 1. c. 260, 227 S. W. 1047, 1. c. 1055 (16, 17).]

█ The instruction on the measure of damages was made the topic of discussion in twelve separate numbered assignments of error under points and authorities. Appellants contend that a number of elements of damages should not have been included in the instruction. For example, medical bills paid by the insurance company, under the Compensation Act, to the approximate amount of

$2500; also the item of future medical attention. The jury returned a verdict for plaintiff in the sum of $30,000. The trial court, through the *remittitur* route, reduced this $20,000. As some indication of plaintiff's injuries note the medical bill of $2500. Plaintiff was a healthy individual prior to his present injuries, earning at least $2,500 per year. At the time of the trial he had lost in excess of $5000 in earnings. Plaintiff was in a hospital from April 4, to July 18, 1933, and thereafter received frequent treatments. A number of operations were performed removing infected bone and in January, 1934, there still was a purulent drainage from his arm. He suffered with an infection, due to his injuries, which for a time seemed to be fatal. His left arm is useless and will remain so permanently. When we consider only two elements, that is, loss of wages and the loss of the arm, with its attending complications and suffering, a $10,000 judgment cannot be considered excessive. In Radler v. St. Louis-San Francisco Railroad Co., 330 Mo. 968, 51 S. W. (2d) 1011, we allowed a recovery of $15,000 for the suffering of the plaintiff in that case, which was far less than that of the plaintiff in the case now before us. In Mattice v. Terminal Railroad Assn. of St. Louis, 270 S. W. 306, $15,000 was allowed for a crushed hand and wrist. Excluding all of the elements of damages appellants would have us exclude, we still find the verdict far from being excessive.

The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.