NATHAN McGUIRE, by EUGENE P. DONNELLY, Guardian and Curator, Respondent, v. STEEL TRANSPORTATION COMPANY, INC., a Corporation, and JOHN C. SLENTZ, Defendants, BYRON C. BEESON, Appellant, No. 41448—225 S. W. (2d) 699.

Division Two, January 9, 1950.

1180

*J. D. James* and *Hogsett, Trippe, Depping, Houts & James* for appellant Byron C. Beeson.

*Thomas C. Swanson* and *K. L. Stockman* for respondent.

BARRETT, C.—The plaintiff, Nathan McGuire, and another Iowa boy, Hearn, "hitchhiked" a ride in Byron C. Beeson's 1946 Chevrolet truck. They rode in the truck bed, covered with a tarpaulin, with their heads toward the cab. It was dark and raining and the boys were asleep. The truck was traveling in a northerly direction on concrete Highway 71 By-Pass in Jackson County at a speed of thirty to thirty-five miles an hour. As it proceeded around an upgrade curve the truck was involved in a sideswiping collision with a tractor-trailer traveling at the same speed in the opposite direction on the downgrade of the curve. The tractor-trailer was being driven by John C. Slentz and it is assumed, for the purposes of this opinion only, that it was being driven for Steel Transportation Company. Nathan McGuire was seriously injured and instituted this action for damages against his host, Byron C. Beeson, and Slentz and Steel Transportation Company. Upon the trial of his cause a jury exonerated both Beeson and Slentz and returned a verdict against Steel Transportation Company in the sum of $5,000.00. Upon the single specification of error in the giving of an instruction, the trial court sustained the plaintiff's motion for a new trial as to all three defendants. The defendant, Beeson, has alone perfected an appeal from the judgment and claims that the trial court should have sustained his motion for a directed verdict for the reason that the plaintiff failed to adduce any evidence from which the jury could draw the inference that he was guilty of any negligence proximately concurring to cause the collision. Oganaso v. Mellow, (Mo.) 201 S. W. (2) 365.

The negligence pleaded against all the defendants was a violation of their duty to exercise the highest degree of care in the operation of their trucks (Mo. R. S. A., Sec. 8383) "by failing to keep their vehicles as closely to the right-hand side of the highway as practicable and by operating their vehicles to the left of the center of the highway and on the wrong side of the highway when such vehicles were meeting

and in such close proximity with one another that they collided.''
Beeson's liability was submitted upon the hypothesization that ''he
failed to . . . keep his vehicle as closely to the right-hand side
of the highway as practicable, . . .''. Mo. R. S. A., Sec. 8385(b);
Edwards v. Woods, 342 Mo. 1097, 119 S. W. (2) 359; Benoist v.
Driveaway Co. of Missouri; (Mo. A.) 122 S. W. (2) 86.

A highway patrolman made an investigation after the accident but
Beeson and Slentz were the only witnesses with firsthand personal
knowledge of the circumstances of the collision. The three of them
were called as witnesses by the plaintiff. It is not necessary to detail
the patrolman's testimony. It is sufficient to say that he gave no
evidence from which it could be inferred that Beeson was negligent
and the respondent does not claim that he did. Beeson said that he
saw the Slentz truck rounding the curve when it was two hundred
to two hundred fifty yards away. Each driver was aware of the fact
that he was meeting a truck and both of them ''dimmed their lights.''
Beeson said that when the trucks were thirty or forty feet apart he
noticed that the trailer on Slentz' truck ''was starting to skid or come
into my lane of traffic.'' He said: ''Naturally when I saw this trailer
skidding into my lane of traffic I tried to avoid an accident by turning
to the right,'' and he thought his front wheel was about to leave ''the
edge of the slab'' when he felt the impact of the trucks. He said that
his truck had passed the tractor part of the other vehicle and that he
had turned to the right to avoid a collision and ''I know that the side
of his trailer come in contact with the side of the cab on my truck at
a point just ahead of the windshield was the first point I noticed the
contact, about a foot ahead of the windshield his trailer hit my truck.''
He testified that his truck was struck by the ''rub rail'' and left rear
trailer wheel of the other truck. He said: ''I determined the point of
impact to be about in the center of my center lane on my half of the
highway.'' When the vehicles were forty to fifty feet apart and
before the trailer swung in his lane of traffic he said: ''I was driving
directly down the center of my half of the highway, the center line was
to my left, and naturally the other edge of the highway was to my
right. . . . I was (driving) within about twelve inches of the
outer edge of the slab and about the same distance from the center
line,'' and ''I was about forty or fifty feet from it, just right onto it,
when it started to skid in my lane of traffic, I immediately tried to
pull to the right, to try to avoid an accident.''

Slentz said that he saw Beeson's truck when it was 150 to 200 yards
away and that in the last 100 feet or so ''It appeared to be
O. K., in its lane of traffic,'' traveling at a speed of approximately
thirty-five miles an hour. He said that the first information he had
that anything had gone wrong was when ''I felt a slight jar and heard
the impact, the sound of the impact.'' He described the damage to
Beeson's truck in this language: ''the side of his truck was damaged

where it had hit my trailer, and the rear axle of his truck was damaged where it had hooked axles with my trailer." As to his own driving position Slentz said: "To my knowledge it was all on my side of the road, my side of the highway. . . . the tractor was definitely on my side of the road." He did not see what happened but he said: "The unit was moving along perfectly. . . . I noticed nothing abnormal about the movement." On cross-examination there were the following questions and answers:

"Q. When the fronts of the two vehicles passed each other there was plenty of clearance?

A. As far as I could tell there was plenty of clearance.

Q. You were on your side and he was on his side? A. That is right.

Q. There were three or four feet of clearance, I believe you said in your deposition?

A. Approximately.

Q. At the time of the impact you were watching the road ahead as you had been when you passed him?

A. That is right.

Q. So you didn't see the position of your trailer at the time of this accident at all?

A. No.

Q. All you can do is assume as to what position it was in, that is all that is possible for you to do, isn't that correct? A. Yes.

&ast; &ast; &ast; &ast;

Q. So far as you know the Beeson truck remained on its own side of the center line at all times out there that night? A. Yes.

Q. You at no time saw it pull onto your side?

A. No.

Q. You don't know of your own knowledge how the accident happened? A. No."

The respondent points particularly to that part of Slentz' testimony in which he said that his unit was moving along perfectly, that he noticed nothing abnormal about its movement, and contends, from that evidence, that the jury could draw the inference that Beeson's truck struck the Slentz trailer while it was on the west side of the pavement. He says, in effect, that each driver blames the other and therefore it is for the jury to say which of them was negligent. But in all the cases in which a recovery has been permitted there was some evidence, either direct or circumstantial, from which negligence was a fair inference. For example, in Benoist v. Driveaway Co. of Missouri, supra, the plaintiff testified that when the defendant's vehicle was 200 feet away it was in the middle of the highway and as it approached continued "edging over from his left." So there was positive evidence, if believed, that the defendant did not drive as

close to the right-hand side of the highway as practicable. In Edwards v. Woods, supra, in addition to the oral testimony there was the circumstance that the left door handle of the plaintiff's car was embedded in the front end of the defendant's truck and the upright supporting his windshield was broken and so it was assumed that negligence on the part of the defendant was a fair inference from the evidence.

Here, however, there is no fact or circumstance from which it is a fair inference that the defendant, Beeson, did not drive and operate his truck as close to the right-hand side of the highway as practicable. Admittedly, the fact that the evidence shows that the defendant's truck was at all times on its right side of the highway, to the right of the center line of the highway, does not necessarily demonstrate as a matter of law that the driver exercised the highest degree of care or did not violate some duty in meeting and passing a vehicle traveling in the opposite direction. 5 Am. Jur., Sec. 286. Likewise, the fact that the defendant, traveling to the right of the center line of the highway, had a right to assume that the driver of the other truck would also exercise due care and operate his truck so as to yield that part of the highway to the right of the center line to the defendant does not necessarily exonerate the defendant. 60 C. J. S., Secs. 306, 310, 317, pp. 723, 728, 732. These rules of the road do not confer absolute rights, but impose reciprocal duties which may be qualified by the circumstances. Stanton v. Jones, 332 Mo. 631, 59 S. W. (2) 648. A defendant traveling to the right of the center line of the highway may assume that a vehicle approaching from the opposite direction will obey the rules of the road until he knows or should know that the rules are not going to be observed and then it may become his duty to exercise further care to avoid a collision, even to driving further to the right. 60 C. J. S., Sec. 317, p. 732. This was a concrete two-lane highway and adjacent to the concrete on the east side there was two or three feet of "black top" or asphaltic paving and the plaintiff contends that Beeson should have been driving his truck on that part of the highway. But, by all the evidence, he was properly using that part of the highway ordinarily used for vehicular travel (Darnell v. Ransdall, (Mo. A.) 277 S. W. 372) and there was no mandatory duty upon him to utilize the additional and adjacent section of the highway, or the shoulder, until, as we have said, he should have become aware of the fact that the plaintiff would not yield one half of the usually traveled portion of the concrete highway. Ketchum v. Pattee, 37 Cal. A. (2) 122, 98 Pac. (2) 1051. The defendant was only bound to guard against foreseeable, perceivable or expectable risks. 60 C. J. S., Sec. 305, p. 721. The fact that Slentz' truck moved along perfectly, nothing abnormal in its movement, does not necessarily or fairly permit the inference that Beeson negligently failed to drive as close to the right-hand side of the highway as prac-

ticable. The left rear side and left rear wheel of his truck did collide with a part of the cab of Beeson's truck. Edwards v. Woods, supra. Both vehicles were traveling at a speed of thirty to thirty-five miles an hour and according to the only testimony on the subject the Slentz trailer moved to the left of the center of the highway when the vehicles were but forty feet apart at which time Beeson immediately, as soon as danger was reasonably foreseeable or perceivable, attempted to avoid a collision by driving further to his right. There was no fact or circumstance in evidence from which it was a fair or reasonable inference that Beeson was negligent in failing to drive his truck "as closely to the right-hand side of the highway as practicable." 60 C. J. S., Sec. 320, p. 740; Lowry v. Mohn, (Mo.) 195 S .W. (2) 652; Borrini v. Pevely Dairy Co., (Mo. A.) 183 S. W. (2) 839; Stanton v. Jones, supra. It necessarily follows that the trial court erred in submitting Beeson's liability to the jury. Accordingly the judgment is reversed with directions to enter a judgment for the defendant, Beeson. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.