RUSSELL E. WILLHITE AND WILMA G. WILLHITE, (Plaintiffs) Respondents, v. THE CITY OF ST. LOUIS, a Municipal Corporation, (Defendant) Appellant, No. 41203—224 S. W. (2d) 956.

Division One, November 14, 1949.

Rehearing Denied, December 12, 1949.

934

*James E. Crowe,* City Counselor, *Harry R. Stocker* and *John P. McCammon,* Associate City Counselors, for appellant.

*Charles P. Noell, John H. Haley, Jr.,* and *Thomas R. McGinnis* for respondents.

HYDE, J.—Action for wrongful death of plaintiffs' minor son. Verdict and judgment for $15,000, reduced by remittitur to $10,500. Defendant appealed and alleges error in Instruction No. 1 which we find must be sustained.

Defendant's truck,. which ran over plaintiffs' son, was going south on the west side of Kingshighway Boulevard. This street was wide enough for three lines of southbound traffic but cars parked on the west side narrowed it so that, at the time of the casualty, only two lines could be accommodated. There was a white line marking the center of the street. Easton Avenue (running east and west) intersected Kingshighway and there was a traffic light at this intersection. The next three streets to the south, coming into Kingshighway from the west (Wells, Ridge and Minerva), ended there and did not continue east.

Witness Jenkins and his sister Mrs. Roff, were driving south in his Chevrolet coach and stopped at the Easton Avenue light. Defendant's two and a half ton dump truck stopped to their right. When the light changed Jenkins started ahead of the truck, driving about 25 miles per hour by the time he reached Wells. His car was near the white center line with the truck following to his right rear about in the center of the west part of the street. Both Jenkins and his sister said they saw plaintiffs' son (six years old) soon after they crossed Easton Avenue. He was standing on the white line in the center of Kingshighway a few feet south of Ridge. The boy was looking around in all directions, apparently confused and frightened. It was about 4:00 P.M. and the traffic on Kingshighway was heavy, especially northbound traffic on the east half of the street. Jenkins slowed down his car and then came to a stop with his left front wheel about where the boy was standing. When he did so the boy walked in front of his car and then started to run in a southwesterly direction. The truck passed to the right of the Jenkins' car and struck the boy. According to Jenkins and his sister, the boy was struck when only three or four feet from the line of parked cars along the west side of Kingshighway. They said he was then to the right of the center of the front end of the truck; that he was rolled

toward the east; and that he was run over by the dual left rear wheels of the truck. Defendant's evidence was that the boy ran into the left side of the truck, back of the cab, and fell under the rear wheels. Instructions offered by it, submitting this theory, were given by the Court.

Instruction No. 1, the only instruction authorizing recovery by plaintiffs, was as follows: "The Court instructs the jury that if you find and believe from the evidence that at the time and place mentioned in evidence defendant's truck as it was going south on Kingshighway, was passing on the right side or to the west of an automobile which had stopped as it was going south on Kingshighway, then the defendant was guilty of negligence, and if you further find and believe from the evidence that as a direct and proximate result thereof William Eugene Willhite and defendant's truck collided and William Eugene Willhite was killed and that Russell E. Willhite and Wilma G. Willhite were the father and mother of William Eugene Willhite, then your verdict should be in favor of the plaintiffs and against the defendant."

We cannot approve this instruction because we cannot hold that it is always negligence as a matter of law, under all circumstances, to pass another motor vehicle on the right; although usually it it. [See Rader v. David (Mo. App.) 207 S. W. (2d) 519; McCoy v. Home Oil & Gas Co. (Mo. App.) 48 S. W. (2d) 113.] This instruction was based on Sec. 8385(e), R. S. 1939, Mo. R. S. A., which provides: "An operator or driver of a vehicle overtaking another vehicle going in the same direction and desiring to pass the same shall pass to the left of the vehicle so overtaken." However, this section itself contains the following exception: "In municipalities, on highways where double lines of vehicles are possible, or on highways where vehicles are obliged to move in one direction only, when any vehicle has slowed down, or stopped, and the operator or driver thereof has signaled for making a left-hand turn, as required herein, the operators and drivers of vehicles following such a vehicle and desiring to proceed along such highway, or to turn to the right on an intersecting highway, may pass such vehicle on the right thereof: Provided, that the operators or drivers of such vehicles shall slow down and proceed cautiously." Section 8385 prescribes rules of the road based on the custom of keeping to the right-hand side of the road. Subsection(b) provides: "All vehicles when in operation shall be kept as close to the right-hand side of the highway as practicable." Ordinarily failure to do so would be negligence. Nevertheless, we have held that, at least under emergency circumstances, "a motorist meeting another automobile may turn to the left," [Lewis v. Zagata, 350 Mo. 446, 166 S. W. (2d) 541, 545 and authorities cited; Filkins v. Snavely, 359 Mo. 221 S. W. (2d) 736.] Likewise, we think that there are circumstances under which it might not be negligence to

pass another automobile on the right and that the jury could have found such circumstances under defendant's evidence in this case.

Certainly there is a different situation on a road upon which there can only be a single line of traffic to the right of the center and broad streets wide enough for several lines of vehicles, or with marked traffic lanes, as the above quoted section recognizes; especially when the traffic is so heavy that all cars cannot travel in one line. In People v. Harden, 200 N. Y. S. 171, the Court, in considering a similar provision in a city ordinance, said: "Admittedly the defendant was going at a slow rate of speed. His sole offense seems to be that, although driving slowly, he was nevertheless driving faster than the cars forming the line on his left, which at that time was almost at a standstill. To hold such a view would mean that every vehicle in the line on the right must, no matter how slow the pace, move slower than the line on the left, and that should the line on the left, from any cause, be obliged to come to a stop, the line on the right must also come to a stop, and remain so until the other line gets in motion. The framers of the ordinance never contemplated any such construction." [See also a similar view of a Pennsylvania statute stated in Zandras v. Moffett, 286 Pa. 477, 133 Atl. 817, 47 A. L. R. 699; likewise see 60 C. J. S. 762, Sec. 326; 5 Am. Jur. 660, Sec, 284; and annotations 24 A. L. R. 516 and 1304, 47 A. L. R. 717, 62 A. L. R. 984, 63 A. L. R. 277, 104 A. L. R. 541, 113 A. L. R. 1328; Vanausdall v. Schorr (Mo. App.) 168 S. W. (2d) 110.] To stop suddenly (to keep from passing another vehicle which has suddenly stopped on a driver's left) in heavy traffic on such a multiple lane street might be more negligent and cause more damage than to proceed. The rules of the road, established by the statute, must be given a reasonable construction and be reasonably applied to unusual or emergency circumstances.

Furthermore, this instruction ignored defendant's evidence that the boy suddenly ran into the side of the truck from behind another car, and defendant's instructions submitting that theory, and submitted no facts contrary to that theory. Thus even if the jury found all the facts submitted in defendant's instructions, it was nevertheless directed by this instruction to find for plaintiff. To impose liability, this instruction only required the jury to find admitted facts, namely: that defendant's truck was passing to the right of an automobile which had stopped; and that the boy and the truck collided. Thus its effect was to direct a verdict for plaintiffs. Defendant's evidence tended to show heavy traffic in both directions, with the truck in a separate line of traffic in the center of the west half of the street; that at the time the car on the left stopped, the front fender of the truck was about even with the side door of the car; that the truck had been slowed down to about ten miles per hour near Ridge when the car on the left slowed down; and that the boy ran

938

from behind a northbound car near the center line. Of course, plaintiffs' evidence made a jury case tending to show that defendant's driver was not keeping a careful lookout and did not slow down and proceed cautiously when the other car stopped. However, under the' traffic conditions shown, we hold that it was error to instruct the jury that defendant was guilty of negligence solely because the truck "was passing on the right side" of the stopped automobile.

The judgment is reversed and cause remanded. All concur.