James CLARK, Plaintiff-Respondent,

v.

Thomas W. DUBBS, Defendant-Appellant.

No. 31023.

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1962.

Motion for Rehearing or for Transfer to Supreme Court Denied Oct. 10, 1962.

Heneghan, Roberts & Cole, John J. Cole, St. Louis, for appellant.

Charles A. Mogab, Donald S. Hilleary, St. Louis, for respondent.

BRADY, Commissioner.

Respondent, hereinafter referred to as the plaintiff, obtained a jury verdict and resulting judgment in the amount of $7,000.00 in this case, arising out of an automobile accident. Upon his timely after trial motion being overruled, appellant, hereinafter referred to as the defendant, filed notice of appeal. Our attention is first directed to the notice of appeal due to plaintiff's motion to dismiss this appeal which, as is our custom, was taken with the case when it was submitted. The notice of appeal filed by the defendant stated that the appeal was taken " * * * from the Order of the Trial Court overruling defendant's motion for judgment or for a new trial entered in this action on the 19th day of June 1961." There is no appeal from such an order, appeals lying only from final judgments, Sections 512.020, 512.050 RSMo 1959, V.A.M.S. In their reply brief, the defendant's counsel frankly concedes that the notice of appeal is, as he puts it, "technically imperfect" and that the appeal should have been taken from the judgment entered on March 30, 1961. However, he urges that this appeal should not be dismissed as it constitutes an attempt in "good faith to appeal from the verdict and judgment." There is no doubt but that this court, and all the appellate courts of this state, have repeatedly stated that if the appeal can be viewed as a good faith attempt to properly appeal, it will not be dismissed, Taylor v. Hitt, Mo.App., 342 S.W.2d 489; Walker v. Thompson, Mo., 338 S.W.2d 114; Ozark Border Electric Cooperative v. Stacy Brothers, Mo.App. (Springfield), 348 S.W.2d 586; Standley v. Western Auto Supply Co., Mo.App. (Kansas City), 319 S.W.2d 924. We will reluctantly accept defendant counsel's statement that this disregard of the plain and clear language of the statutory requirement is a good faith attempt to comply with its plain and unambiguous terms. The motion will be overruled.

In this appeal the defendant raises three points. He contends that the trial court prejudicially erred in refusing to give his offered Instruction B; that it erred in giving Instruction No. 5 offered by the plaintiff; and that the verdict was so excessive as to indicate bias, prejudice and passion which was created by misconduct of plaintiff's counsel. Because of the nature of these allegations of error and our disposition of the appeal, the factual review will be very limited.

Shortly before 11:00 A.M. on January 14, 1960, plaintiff was driving his Ford automobile eastwardly on Highway 30, a two-lane pavement approximately 20 feet wide, and was approaching the intersection of that highway with Highway 141 in St. Louis County, Missouri. On that day there was a light rain and the pavement was wet. Just to the west of the intersection of these highways there is a bridge, and west of the bridge on the north side of the highway is located Richard's Garage. Defendant had been conducting some business at the garage and, pulling out of the garage driveway onto the highway, was turning left, eastwardly, toward the bridge which was about 90 feet east of the driveway. Plaintiff's evidence was that his car was 45 to 50 feet west of defendant's automobile in the garage driveway when the defendant pulled out onto the highway. The eyewitness Oliver stated that plaintiff was 40 to 50 feet west of defendant's car when defendant's car was at the north edge of the highway. Plaintiff put his speed at this time at 25 to 30 miles per hour. Oliver put plaintiff's speed at 30 to 35 miles per hour. Defendant testified that plaintiff's speed was

45 to 50 miles per hour. The evidence of the police officer Ledbetter was that at the scene the plaintiff gave his speed at "approximately forty miles per hour" and that he, the police officer estimated his speed (at 40–45 miles per hour) on the basis that "Well, a hundred feet of skid marks normally will register between forty-three and forty-five miles per hour." Defendant's speed at this time was estimated by plaintiff at 20 miles per hour, at 10 miles per hour by the witness Oliver, and at 10 to 15 miles per hour by the witness Tocco. Defendant told Ledbetter that he was doing 10 to 15 miles per hour.

What happened thereafter is not seriously disputed. Plaintiff applied his brakes when he first saw the defendant, and the plaintiff's car started skidding on the wet highway with the result that the left rear door of plaintiff's car collided with the right rear of defendant's car at a point which plaintiff estimated to be about 40 feet from the west end of the bridge. The point of impact was about one car length from the west end of the bridge, or 15 to 20 feet, according to other witnesses. Plaintiff's automobile continued on after the impact and struck the west end of the bridge abutment on the south side of the highway, and went into the ditch. It had been stipulated by counsel that there was a 35 miles per hour speed zone for eastbound traffic which extended about 300 feet west of the point of impact. In view of our disposition of this appeal, it will not be necessary to set out Instruction No. 5. The trial court refused to give defendant's offered Instruction B, which reads as follows:

"The Court instructs the jury that if you find and believe that at the time of the collision mentioned in evidence, plaintiff had been operating his automobile at a speed of 40–45 miles per hour in a duly constituted 35 mile per hour speed limit zone then you are instructed that under the law he was negligent and if you further find and believe that such negligence, if any, on plaintiff's part caused or contributed to cause the collision mentioned in evidence then you are instructed that your verdict shall be against the plaintiff and in favor of defendant, Thomas Dubbs, and this is so even though you should also find and believe defendant was negligent under the evidence and instructions of this Court."

However, the court did give Instruction No. 7 at the request of the defendant made after Instruction B was refused. That instruction reads as follows:

"The Court instructs the jury that if you find and believe from the evidence that upon the occasion mentioned in evidence plaintiff was operating his automobile at a speed of 40–45 miles per hour and if you further find that the highway over which plaintiff was operating his automobile was wet and slippery and if you further find and believe that it was raining at the time of the collision mentioned in evidence and if you further find and believe that motor vehicles were parked along the north side of the highway in front of the salvage yard mentioned in evidence in such a position as to obscure the view of vehicles entering the highway from said salvage yard driveway and if you further find and believe that in so operating his automobile at a rate of speed of 40–45 miles per hour under the aforesaid circumstances plaintiff did not exercise the highest degree of care, then you are instructed that plaintiff was negligent, and if you further find and believe that such negligence if any, on plaintiff's part, caused or contributed to cause the collision mentioned in evidence then you are instructed that plaintiff cannot recover and your verdict shall be in favor of defendant Thomas Dubbs and this is so even though you should also find that Dubbs was negligent under the evidence and these instructions."

Considering the defendant's first allegation of prejudicial error, defendant's contention that the refusal of Instruction B constitutes reversible error because under Instruction No. 7 the jury was required to find that in operating his automobile at a speed of 40 to 45 miles per hour " * * * plaintiff did not exercise the highest degree of care * * * " whereas under Instruction No. B, no such finding would be required, it is the defendant's position that since the duly constituted speed zone for eastbound traffic was stipulated and since the defendant testified that plaintiff's automobile was traveling at 40 to 50 miles per hour, it is unnecessary for an instruction to require the finding of a violation of the highest degree of care and negligence, because the violation of the duty to observe the legal speed limit of 35 miles per hour is negligence per se. In other words, Instruction No. 7 merely permitted the jury to find plaintiff contributorily negligent, whereas defendant should have been allowed to give Instruction No. B, which directed the jury to find plaintiff contributorily negligent if they found plaintiff was driving at the speed hypothesized. The result, defendant argues, is that he was required to carry a greater burden than the law requires of him, and was deprived of submitting his valid defense to the jury.

■ While not determinative of the final outcome of this appeal, defendant's position in this regard must be sustained. Even plaintiff admits this is so. There is no doubt but that since there was no claim of, or evidence as to, any exculpating circumstances, violation of this stipulated legally constituted speed zone was negligence, and did not require any further finding from the jury as to the exercise of the highest degree of care, Bowman v. Ryan, Mo.App., 343 S.W.2d 613, 1. c. 621, 622 [20–24]; Swain v. Anders et al., 349 Mo. 963, 163 S.W.2d 1045, 1. c. [14] 1052. It should be kept in mind that the application of this duly constituted speed limit of 35 miles per hour was stipulated without

any reference to the authority for such a limit, whether it be an ordinance or whatever. Neither does it appear that the zone was within the city limits of Fenton, Missouri. The only reference is that it took place "on the outskirts of Fenton" which could mean just inside of, or just outside of, that city. Accordingly, we must assume that the limit of 35 miles per hour was without qualification of any kind. We are therefore not confronted with a situation where the establishing authority had exceptions noted within its own language. See Willhite v. City of St. Louis, 359 Mo. 933, 224 S.W.2d 956.

■ Even so, the fact that the plaintiff was operating his automobile in violation of the limits of the stipulated duly constituted speed zone raises no presumption that the accident was caused by excessive speed. This court has specifically so held and also has held that unless it appears that the negligence charged caused or directly contributed to cause the accident resulting in the injuries for which recovery is sought, no liability attaches for such injuries even though the negligence charged constitutes negligence per se, Bauman v. Conrad, Mo. App., 342 S.W.2d 284 at [3] 287, and cases therein cited. It still remained for defendant to show that plaintiff's negligent act was the proximate cause of the collision and his injuries, Bauman v. Conrad, supra.

In Bauman v. Conrad, supra, this court held at 342 S.W.2d 1. c. 288 [5]:

"In other words, excessive speed is not the proximate cause unless it prevents the operator of the vehicle traveling at said excessive speed from avoiding the accident. It must be shown, as we have said, that the accident would not have occurred except for the excessive speed shown by the evidence."

In that case this court held there was no substantial evidence that the excessive speed shown by the evidence was a direct and proximate cause of the collision and

injuries which there occurred. Defendant distinguishes the instant case from Bauman on the ground that in Bauman this court found an evidentiary failure to show that the defendant therein was driving at the excessive speed for any distance other than as submitted by the instruction in that case "* * * at the time of the accident * * *" whereas in the instant case there was defendant's evidence that when plaintiff was 250 feet from him he was traveling in excess of the permitted limit. Plaintiff in the case at bar is candid in his brief to admit that if we take the defendant's version as to distance apart (250 ft.) as well as defendant's lowest version as to speed, 45 miles per hour, the defendant made a case of plaintiff's negligence being the direct or a contributing cause, for 250 feet divided by 15 (the excessive speed of 10 miles per hour equals 15 feet per second) would have given the defendant an extra 16.6 seconds to complete his turn (he was then in the middle of a 20-foot pavement going 10 miles per hour at the slowest estimate given) and be on his way. However, the plaintiff urges that this is so only if the jury believes defendant's evidence as to both speed and distance, for even if the jury found the plaintiff to be traveling at 40–45 miles per hour as submitted in the instruction and so violating the speed zone, yet if they believed the plaintiff as to the distance the cars were apart, 50 feet, the excessive speed could not be the direct or a contributing cause, for there was no opportunity then for the plaintiff to have avoided the accident which, at that distance, was about one second away at the legal limit of 35 miles per hour and about two-thirds of a second away at 45 miles per hour. Instruction B, plaintiff urges, told the jury that the position of the automobiles made no difference, yet only if defendant's testimony as to that position is believed can the negligence charged, a speed of 40–45 miles per hour in a 35 miles per hour zone, be the direct or a contributing cause of the collision. Plaintiff concludes that the instruction was therefore properly refused because it failed to hypothesize the position of the automobiles as defendant's evidence put them and require the jury to so find, any finding by the jury as to causation being otherwise founded on forbidden speculation and conjecture.

Defendant points to the plaintiff's failure to cite a case as authority for his position that the constitutive facts on the issue of proximate cause need to be hypothesized and included in the instruction. Defendant contends that no hypothesization of facts to submit proximate cause further than that found in Instruction B is necessary and argues that the ultimate fact may be submitted for a finding where excessive speed in violation of lawful limits is first required to be found and there is substantial evidence in the case from which the jury could find such per se negligence was a contributing cause of the collision. Defendant's position is that all that is required is for the instruction to hypothesize sufficient facts from which the jury can find the violation of the speed zone, so long as there was *evidence* from which the jury could reason from that finding to make a causal connection. Since, he argues, there was evidence in this case to show that the excessive speed existed, under his version of the facts, back 250 ft. from the place he first saw the plaintiff, he contends that fact distinguished this case from Bauman v. Conrad, supra, and alleviates any necessity of hypothesizing the position of plaintiff's car.

■ In our view the point at issue is ruled by Watt v. St. Louis Public Service Company, Mo., 354 S.W.2d 889, which is not cited by either party. In the Watt case there was a city ordinance limiting speed at the location of the collision to 15 miles per hour, and violation of this ordinance was submitted in the verdict directing instruction offered by plaintiff and given by the court. Defendant appealed, alleging as prejudicial error the giving of that instruction and urging as support therefor that the violation was not the direct and

proximate cause of the collision. It is unnecessary to set out the factual situation there existing because it suffices for the purpose of our inquiry that the plaintiff testified that he saw the defendant about three car lengths (which he estimated at 30 to 45 feet) from him, going 20 miles per hour, an excess of 5 miles per hour. In short, as in the instant case, the violation continued for a longer period of time than was presented in Bauman, although not for so long as in the instant case. The contentions advanced by the plaintiff in the instant case were those made by the defendant in the Watt case, including the failure of any evidence as to stopping distances at the legal speed limit or at any speed which plaintiff in Watt, and defendant here, was shown by the evidence to be traveling. The court in Watt rejected these arguments and held the instruction properly given. The defendant is correct in distinguishing Bauman v. Conrad, supra, from the case at bar, there being even more time during which the violation of the speed limit occurred in the instant case than there was in the Watt case, which was distinguished on that ground from Bauman v. Conrad, supra. Therefore, as in the Watt case, the evidence was present from which the jury could find a causal connection.

It follows that the trial court prejudicially erred in refusing Instruction B. The result herein reached on this allegation of error compels us to reverse the judgment and render unnecessary any ruling upon the other allegations of error. The plaintiff's motion to dismiss this appeal should be overruled and the judgment should be reversed, and the cause remanded to the trial court. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court. The motion to dismiss the appeal is overruled; the judgment is reversed, and the cause remanded to the trial court.

ANDERSON, P. J., WOLFE, J., and GEORGE P. ADAMS, Special Judge, concur.

RUDDY, J., not participating.